(No. 12228.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR W. ROBERTSON *et al.* Plaintiffs in Error.

*Opinion filed October 21, 1918.*

1. CRIMINAL LAW—*when an indictment is sufficient.* An indictment setting forth an offense in the terms and language of the statute creating the offense, or so it may be easily understood by the defendant and the jury, is sufficient.

2. SAME—*name of person whose property was intended to be destroyed by explosives is unnecessary.* The purpose of the act of 1887 to regulate explosives and punish an improper use of the same is the protection of property generally, and the name of the owner of property destroyed or intended to be destroyed is not an essential element of the offense and need not be set out in an indictment.

3. SAME—*defendants may be guilty of conspiracy to commit offense though the offense was completed.* Persons who conspire to make an unlawful use of explosives to destroy property may be convicted of the conspiracy notwithstanding the contemplated offense was actually completed and the property destroyed, as a conspiracy to commit a crime does not merge in the crime itself.

4. SAME—*cross-examination is confined to matter brought out on direct examination.* Cross-examination is to be confined to what was brought out on direct examination, and where a witness is examined as to a conversation the opposite party can cross-examine him upon such conversation only as to the same subject matter.

5. SAME—*when refusal to allow witness to give entire statement is not harmful.* Where evidence of confessions of several of the defendants on trial for conspiracy is introduced by the People but the statement of each defendant is confined to his own acts and no question is asked or answer given on the direct examination as to what the other defendants had said or done, it is not harmful to refuse to allow counsel, on cross-examination, to obtain the entire statement of each of the confessing defendants, with the intention of moving to exclude the whole statement if in its entirety it implicated the other defendants.

6. SAME—*what amounts to "procuring" explosives.* "Procuring" explosives for an unlawful purpose, within the meaning of the act of 1887, does not mean stealing or fraudulently acquiring the same, and defendants are guilty of conspiring to procure explosives to unlawfully destroy property where they go to the place where the explosives have been concealed by one of their number and take them away for use in their unlawful purpose.

7. INSTRUCTIONS—*when refusal of instructions is not error.* In a criminal case it is not error to refuse instructions which have no basis in the evidence, nor is it error to refuse an instruction the principle of which is contained in another instruction given at the request of the same party.

8. SAME—*when the defendants cannot complain that judge read part of instruction, only.* The defendants cannot complain that the judge read to the jury only the first sentence of an instruction although he permitted the whole instruction to go to the jury without striking out the part not read, where the sentence read was the only proper part of the instruction, the remainder being a mere argument in favor of the defendants as to the weight of their evidence.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

MAHER & CARON, and CHARLES P. R. MACAULAY, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and JAMES C. O'BRIEN, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Arthur W. Robertson, John J. Campbell, Michael Kuchinski, Charles Maves, James F. Sullivan, Jack Domke, Alphonso M. Shangraw and Charles G. Wilson were indicted in the criminal court of Cook county for conspiracy to commit the criminal offense specified in section 1 of the act entitled "An act to regulate the manufacture, transportation, use and sale of explosives, and to punish an improper use of the same." (Laws of 1887, p. 180.) Charles G. Wilson was allowed a separate trial and James F. Sullivan was acquitted. The other defendants were convicted and the Ap-

pellate Court for the First District affirmed the judgment. A writ of error to the Appellate Court was sued out and the record brought to this court for review.

The defendants moved the court to quash the indictment but the motion was denied, and it is contended that the court erred for the reason that the name of the owner of the property which the defendants intended to destroy was not alleged in the indictment. The intent charged in the indictment was to use the explosives, and that the same should be used, for the unlawful injury to and the unlawful destruction of life and property, and the charge was in the language of the statute. An indictment setting forth an offense in the terms and language of the statute creating the offense, or so it may be easily understood by the jury, is sufficient. (*Strohm* v. *People,* 160 Ill. 582; *Honselman* v. *People,* 168 id. 172; *White* v. *People,* 179 id. 356; *Glover* v. *People,* 204 id. 170.) An offense affecting life or property may be private in its nature and the person or the owner of property be so affected by the crime that his name becomes material to a statement of the offense and is an essential element of the charge, but the manifest purpose of the statute in question is the protection of property generally, and the name or names of the owner or owners of property destroyed or intended to be destroyed is not an essential element of the crime. The offense is the making, manufacturing, compounding, buying or selling or otherwise procuring or disposing of explosives with the intent to use the same, or that the same may be used, for unlawful injury to or the unlawful destruction of life or property "in any place whatsoever." It is not necessary to state the name or names of the owners of property intended to be destroyed, and the indictment, which charged the offense in the language of the statute, was sufficient.

It is next insisted that the conspiracy was merged in the completed offense and therefore the defendants could not be convicted of the conspiracy. This is upon the ground that

the evidence for the People was that the defendant Charles Maves broke open the storehouse of the Ætna Explosive Company at Willow Springs and took therefrom a large amount of dynamite, safety fuses and caps, which he hid in some bushes in the timber, and that he and other defendants went to the place where the explosives were concealed and took them in an automobile to Chicago and actually destroyed property. A single transaction may include several independent crimes, and if there was anything left of the doctrine contended for after the decisions in the cases of *Graff* v. *People,* 208 Ill. 312, and *People* v. *Darr,* 255 id. 456, and 262 id. 202, it is certain that the conspiracy to commit a crime does not merge in the crime itself. The conspiracy is a crime of itself, and the offense is complete without the commission of the act for which the conspiracy was formed. A conspiracy may or may not precede the commission of an offense, but it is not a necessary element of the offense or included in it. The defendants were not relieved from punishment for the conspiracy by the fact that they committed the crime.

It is next contended that there was a variance between the evidence and the indictment from the fact that the indictment charged an intent to use the explosives for unlawful injury to or unlawful destruction of life or property, while the evidence showed that the property destroyed was the property of the Commonwealth Edison Company. No claim was made on the trial that there was a variance and the court was not called upon to rule concerning a variance, but the fact was that the property destroyed was not, alone, that of the Commonwealth Edison Company. The defendants were employees of that company and were on a strike, but there was no evidence that their purpose was to destroy only property of that company. The conspiracy was complete when the explosives were procured for the purpose of destroying property, and, in fact, posts, man-holes and cables in streets and alleys were destroyed and the mo-

tors and machinery of other companies and persons were stopped. Not only was the question of variance not raised at the trial but there is no merit in it.

The People introduced evidence of confessions by the several defendants of their participation, respectively, in the conspiracy, but no question was asked nor answer given on direct examination as to what either defendant said about other defendants or their acts and the statements were confined to what each defendant said about himself and his own acts. On cross-examination counsel for the defendants asked for the whole statement of each defendant, stating his purpose to bring out the testimony so that if the entire statement incriminated other defendants he would move to strike out the whole statement as incompetent. The court refused to permit such cross-examination, and it is contended that the court erred in the ruling under the general doctrine that where a witness states a part of a conversation on direct examination he may be required on the cross-examination to state the whole conversation. (*Phares v. Barber,* 61 Ill. 271; *Black v. Wabash, St. Louis and Pacific Railway Co.* 111 id. 351.) It is, however, a fundamental rule of cross-examination that it is to be confined to what was brought out on the direct examination, and where a party examines a witness as to a conversation, the opposing party can only cross-examine him upon the conversation as to the same subject matter. (*Chicago and Aurora Railroad Co. v. Thompson,* 19 Ill. 578.) The court is not warranted in admitting, on cross-examination, statements about other persons or matters because they were included in the conversation. If the defendants had been permitted to cross-examine the witnesses with the effect of incriminating themselves, they could not have had the testimony which was perfectly competent and proper, introduced on the direct examination, excluded, and the refusal of the court to permit the defendants to show that they were included in the conspiracy was in no way injurious to them.

Much complaint is made of the refusal of instructions offered by the defendants. The first six instructions were repetitions of directions to find the defendants not guilty because the evidence did not, as a matter of law, sustain the indictment. The evidence did, as a matter of law, sustain the indictment. But aside from that fact the court was justified in refusing all such instructions. *People* v. *Zurek,* 277 Ill. 621.

Instruction 7 stated that if the jury believed from the evidence, beyond all reasonable doubt, that the defendants procured the explosives with the intent to use the same for the unlawful injury to and destruction of property they should acquit them of the conspiracy charged in the indictment,—*i. e.,* if the defendants were proved guilty beyond all reasonable doubt the jury should find them not guilty. Nothing more need be said of that instruction.

Instructions 8 and 9 were similar, and stated, in substance, that the fact of two or more persons acting in concert, moving explosives from place to place for an unlawful purpose, was not, in law, a conspiracy to procure explosives. There was nothing in the evidence to justify such instructions. The evidence about moving explosives was that the defendants went to the place where Maves had concealed them, procured them, took them to Chicago, hid them in their houses and a hen-coop, and then took them and put them in poles and man-holes, causing numerous explosions. The jury could not, under any aspect of the evidence, conclude that the defendants were merely changing the locations of explosives.

The thirteenth instruction stated that if it did not appear that the statements of the defendants were made freely and voluntarily the jury should give them no weight. The defendants had merely denied that they made the statements at all, and whether they were in fact made was the only question before the jury. There was not the slightest evidence of any improper influence exerted to cause the state-

284 —40

ments to be made, and the instruction had no relation to any testimony.

It is admitted that the same rule stated in instruction 21 was given to the jury in instruction 25, and the complaint is that this was a better instruction. The defendants were entitled to but one instruction stating the same rule of law, and if counsel regarded instruction 21 as the better one, that one, alone, should have been offered.

Instruction 22 was refused, but instruction 30 was practically the same, and it was given. If the instructions had been correct statements of the law the defendants were entitled to but one, but both were wrong and neither should have been given. Instruction 30 advised the jury that if Charles Maves stole the explosives on his own initiative, solely, and the other defendants entered into an agreement with him to use the explosives, to carry them into the city and by means of them to destroy property, which was the only conspiracy entered into by the defendants, they should find the defendants not guilty. That was not the law. Procuring explosives does not mean stealing or a fraudulent acquisition, and going to the place where Maves had concealed the explosives to get them for the unlawful use was procuring them.

Instruction 35 was as follows:

"The defendants are competent witnesses in their own behalf, and though you may, indeed, take into consideration the fact that they are interested in the result of this prosecution, yet you should not refuse to fairly consider their testimony merely because they are defendants. The testimony of a defendant may be of even greater weight than the testimony of all the other witnesses in the case put together, if the jury consider it entitled to such weight, even if he is contradicted by other witnesses in material parts of his testimony and is corroborated by none; and in this case you should give the defendants the benefit of any reasonable doubt of guilt, if any such you have, whether such doubt

arises from the testimony of the defendants or from any other evidence in the case, when all the evidence is considered together."

The court read the first sentence of the instruction and did not read the remainder but sent it to the jury. The defendants had the benefit of permitting the jury to read the instruction founded on no rule of law but an argument in favor of the defendants upon the weight of the evidence. Instead of an error against the defendants, permitting it to go to the jury was an error in their favor. The court might have stricken out all of the instruction after the first sentence and given it to the jury but was not bound to do so, and it would not have been error to refuse it.

Several instructions given to the jury were arguments for the defendants and not always in accordance with the law. Instruction 27 began with a statement that a verdict of not guilty does not necessarily mean that the jury were convinced of the innocence of the defendants of the charge, and concludes: "And even if you believe from the evidence that there is no probability that they are innocent, yet it is your duty as jurors to find the defendants not guilty." The defendants have no reason to complain of the law given to the jury.

It is alleged as error that the verdict did not find the age of Campbell. The testimony was that he did not know how old he was, and he signed a statement that he was twenty-six years old. The verdict was returned before the Parole law, which extended the ages of persons who might be sent to the reformatory from twenty-one to twenty-six years, went into effect, and either from Campbell's testimony or the law the verdict was not insufficient because it did not find his age.

The verdict was returned on June 2, 1917, a new trial was denied on June 30, 1917, and judgment on the verdict was entered on July 10, 1917. An error has been assigned on the ground that the judgment was not entered accord-

ing to the statute which took effect on July 1, 1917, but it is conceded by counsel that the error was not assigned in the Appellate Court nor the attention of that court directed to the question sought to be raised by it. The question, therefore, is not before this court and the error will not be considered.

The evidence left no reasonable doubt of the guilt of the defendants. The testimony for the People established beyond question a conspiracy to go to the place where the explosives were concealed and to get them and take them to Chicago for the unlawful purpose of destroying property. The defendants denied their guilt and also denied making the confessions, which were conclusively proved not only by testimony of witnesses who heard them made but by the stenographic notes taken at the time. There was good reason for not believing them.

The judgment is affirmed.          *Judgment affirmed.*